IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION      2009 AUG 24 PH 3: 14

DIANE MORGAN for )
 RICHARD MORGAN, )
 )
 Plaintiff, )
 )
v. ) CIVIL ACTION NO.: CV508-050
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
 Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Diane Morgan ("Morgan"), contests the decision of Administrative Law Judge Donald B. Fishman ("ALJ Fishman" or "ALJ") denying her son's claim for Supplemental Security Income ("SSI"). Plaintiff urges the Court to reverse the ALJ's decision and enter an award of benefits, or, in the alternative, order that the case be remanded for a proper determination of the evidence. Defendant asserts that this case should not be remanded, as the ALJ's decision is supported by substantial evidence.

Morgan filed an application for SSI payments on behalf of her minor son, Richard Morgan ("Richard") on June 22, 2005, alleging that Richard became disabled on September 8, 1993, due to Wolff-Parkinson-White syndrome, emotional/behavioral problems, migraines, and asthma. (Tr. at 10, 63, 80). After the application was denied initially and upon reconsideration, Morgan timely filed a request for an administrative hearing. (Tr. at 10). On December 6, 2007, ALJ Fishman held a hearing at which

Morgan appeared, with counsel, and testified. (Id.). ALJ Fishman found that Richard was not disabled within the meaning of the Social Security Act. (Tr. at 22). The Appeals Council denied a request for review, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 2-4).

Richard, born on September 8, 1993, was fourteen years old when the ALJ rendered his decision. (Tr. at 22, 80).

## ALJ'S FINDINGS

Under the Social Security guidelines, a child under the age of eighteen is considered disabled if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide the following three-step sequential process that must be followed by the ALJ in determining whether a child is entitled to benefits:

> (1) Is the child engaged in substantial gainful activity?
> If yes, the child is not disabled. If no, then:
>
> (2) Does the child have a severe impairment?
> If no, then the child is not disabled. If yes, then:
>
> (3) Does the impairment medically meet or
> functionally meet a listed impairment in Appendix 1?
> If yes, the child is disabled.

20 C.F.R. § 416.924; see also Wilson v. Apfel, 179 F.3d 1276, 1278 n.1 (11th Cir. 1999).

If a child's impairment does not medically meet a listed impairment, the ALJ must determine whether the child "'functionally equal[s] the listings.'" "Functionally equal the listings," means that the child's "impairment(s) must be of listing-level severity; i.e., it

must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The domains uses are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for self; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In the case sub judice, the ALJ found that Richard was not engaged in substantial gainful activity at the alleged onset date. The ALJ also found that Richard has the severe impairments of dysthymic disorder, separation anxiety disorder, and obesity.[1] (Tr. at 13). However, the ALJ did not find that these impairments met or medically equaled any of the Listings. Furthermore, the ALJ found that Richard did not have an impairment or combination of impairments that functionally equaled a Listing. (Tr. at 14). Specifically, the ALJ found that Richard has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and health and physical well-being. The ALJ further found that Richard has no limitations in the domain of caring for himself. (Tr. at 8-12).

## ISSUES PRESENTED

Morgan asserts that the ALJ erroneously assigned significant weight to the opinions of non-examining State Agency physicians. Morgan further asserts that the ALJ based his decision on only four pieces of evidence. Morgan contends that substantial evidence does not support the ALJ's determination that Richard's impairments do not functionally equal a Listing.

---

[1] The ALJ determined that Richard's Wolff-Parkinson-White syndrome, diabetes mellitus, asthma, migraine headaches, and hearing loss were not severe impairments. (Tr. at 13).

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION OF AUTHORITY

I. **ALJ Fishman did not err by affording significant weight to the opinions of the State Agency physicians.**

Morgan contends that the ALJ erred by giving significant weight to the evaluations of the non-examining State Agency physicians because their opinions were

rendered prior to the development of much of the medical evidence in the record. (Doc. No. 15, p. 17). Defendant asserts that the opinions of reviewing doctors amount to substantial evidence where, as here, they represent a reasonable reading of the relevant medical evidence. (Doc. No. 16, pp. 12-13) (citing 20 C.F.R. § 416.927(f)). Defendant further asserts that the reviewing doctors' opinions were not directly contradicted by the opinion of any treating or examining physician. Defendant contends that Dr. Lina H. Harper's statement that Richard was a good candidate for disability only indirectly contradicts the State Agency physicians' opinions. (Id. at 13). Defendant further contends that the ALJ was entitled to rely on the opinions of the State Agency physicians regardless of when they reviewed the record because the newer medical evidence did not show any prolonged worsening. (Id. at 18-19) (citing Pauldo v. Astrue, 2008 WL 5188806, *3-4 (S.D. Ga. 2008)).

"The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985). However, "[a]lthough the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability." Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). "[T]he report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence. Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). However, if the report of the non-examining doctor is not contradictory to that of the examining doctor's, it is not error for the ALJ to rely on the non-examining doctor's report. See id. at 585.

ALJ Fishman observed that Dr. Harper opined that Richard was "a good candidate for disability." (Tr. at 16). ALJ Fishman further observed that the opinion that a claimant is disabled is an issue reserved for the Commissioner. (Tr. at 16-17). The ALJ remarked that he gave Dr. Harper's opinion some weight because it was the opinion of a treating physician consistent with the objectively documented impairments. ALJ Fishman noted that State Agency physicians also found that Richard's impairments or combination of impairments were severe, however, they further found that the impairments do not meet, medically equal, or functionally equal the Listings. ALJ Fishman observed that the State Agency examiners' opinions were considered expert opinion evidence from non-examining sources. The ALJ further observed that the State Agency physicians' opinions were given significant weight because they were based on a thorough review of the evidence and were consistent with the record. (Tr. at 17).

ALJ Fishman did not err by giving significant weight to the opinions of the State Agency examiners because their opinions were not contradictory to the reports of the treating and examining doctors. See Edwards, 937 F. 2d at 584 (holding that an ALJ may rely on a non-examining doctor's report if it is not contradicted by the opinion of an examining doctor). Dr. Harper's statement that Richard was a good candidate for disability is the only medical evidence that is contradictory to the findings of the State Agency examiners. However, as ALJ Fishman noted, an opinion on whether a claimant is disabled is an issue reserved for the Commissioner. Such opinions are never entitled to controlling weight or given special significance, even when offered by a treating source. Social Security Ruling 96-5p. Thus, Dr. Harper's statement that Richard was a

good candidate for disability does not bar ALJ Fishman from appropriately affording the State Agency physicians' opinions significant weight.

Morgan's contention that the ALJ should not have given significant weight to the State Agency examiners' opinions because they did not have access to the entire medical record is similarly without merit. An ALJ may give substantial weight to the opinions of non-examining state agency physicians rendered prior to the full development of the medical record if the later evidence does not contradict their findings. Pauldo, 2008 WL 5188806, *3-4.[2] Here, the State Agency examiners' opinions were offered on October 21, 2005, and December 1, 2006, while ALJ Fishman rendered his decision on January 25, 2008. While the amount of time between the ALJ's decision and the State Agency examiners' opinions was substantial, it was not unduly so, and, more importantly, none of the subsequent medical evidence contradicted their opinions. Thus, ALJ Fishman did not err by affording significant weight to the State Agency physicians' opinions because the opinions were still supported by substantial evidence and consistent with the record. See Pauldo, 2008 WL 5188806, *3-4.

II.  **ALJ Fishman sufficiently evaluated and discussed the evidence.**

Morgan contends that the ALJ based his decision on only four pieces of evidence. Morgan further contends that the ALJ only considered and credited Dr. Karuna Reddy's medical records from July 30, 2007; Dr. Harper's medical records from October 29, 2007; parts of Dr. David W. Acker's consultative evaluation; and Dr. Margaret Samyn's medical records from May 19, 2006. (Doc. No. 15, p. 18). Morgan

---

[2] In Pauldo, the court determined that the ALJ did not err by giving substantial weight to the opinions of state agency physicians rendered nearly two years prior to the ALJ's decision because the later evidence did not contradict their opinions. The opinions were thus still supported by substantial evidence and consistent with the record. Pauldo, 2008 WL 5188806, *3-4.

asserts that the ALJ did not discuss the medical records of Dr. M.J. Martelli, Dr. Adrienne Butler, Dr. Randall Bryant, Dr. Eugene Engen, Dr. Christopher Houk, Dr. Kenneth Burch, and Mr. Jim Hankla. Morgan further asserts that the ALJ did not discuss the medical records from Satilla Cardiac and Pulmonary Rehab or the September 2, 2007, records from Satilla Regional Medical Center ("Satilla Regional"). Morgan contends that the ALJ only discussed one of the nineteen occasions that Dr. Reddy treated Richard. Morgan further contends that the ALJ only discussed one office visit out of the nearly two years that Dr. Harper treated Richard. Morgan asserts that substantial evidence cannot support such a cursory review of the evidence. (Id. at 19).

Defendant contends that the ALJ did mention, directly or indirectly, most of the evidence Morgan alleges he ignored. Defendant further contends that much of the supposedly ignored evidence was not relevant. (Doc. No. 16, p. 13).

Morgan's contention that ALJ Fishman erred because he based his decision on only four pieces of evidence is without merit. The relevant time period for the ALJ's decision begins on June 22, 2005, the date that Morgan filed Richard's SSI application. See 20 C.F.R. § 416.9335. ALJ Fishman did not err by failing to discuss the medical records of Dr. Martelli (Tr. at 182-188) or Dr. Butler (Tr. at 189-197) because they treated Richard prior to the period under consideration here. Morgan's assertion that ALJ Fishman only cited Dr. Reddy's July 30, 2007, report that Richard was doing fairly well is unavailing. ALJ Fishman cited Dr. Reddy's treatment notes to support his position that Richard's diabetes is controlled with medication (Tr. at 13), as well as observing that Dr. Reddy's treatment records showed that Richard was doing fairly well, his blood sugar was stable, and his affect was calm and relaxed. (Tr. at 21). ALJ

AO 72A
(Rev. 8/82)

Fishman was not required to exhaustively discuss Dr. Reddy's entire treatment record because those records were consistent with the ALJ's decision and an ALJ is not required to reference every piece of evidence in his decision. See Dyer, 395 F. 3d at 1211.[3] Similarly, ALJ Fishman did not err by failing to exhaustively discuss the medical records of Dr. Harper. As discussed supra, the ALJ appropriately addressed Dr. Harper's opinion that Richard was a good candidate for disability. Further, ALJ Fishman was not required to reference all of Dr. Harper's medical records because they were consistent with his opinion. See Id. Despite Morgan's assertions to the contrary, ALJ Fishman expressly cited Dr. Bryant's medical records as Exhibits 19F and 22F (Tr. at 13); Dr. Engen's consultative examination report as Exhibit 11F (Tr. at 13); Dr. Burch's medical records as Exhibit 35F (Tr. at 13); and Mr. Hankla's records as Exhibit 4F. (Tr. at 14). Accordingly, Morgan's assertions are unavailing.

The medical records from Satilla Cardiac and Pulmonary Center and Dr. Houk were not specifically referenced; however, there was no error because the results were consistent with the ALJ's decision. See Dyer, 395 F. 3d at 1211. Finally, ALJ Fishman did not err by failing to reference Satilla Regional's medical records. (Tr. at 314-405). A large portion of Satilla Regional's medical records relate to treatment administered prior to the relevant time period. (Tr. at 381-405). ALJ Fishman was not required to discuss Satilla Regional's brief treatment of Richard for swelling under his right arm (Tr. at 372-380) because the condition lasted less than twelve months. See 20 C.F.R. § 416.906. The remaining medical notes from Satilla Regional relate mostly to Richard receiving treatment for a nasal abscess and chest pains. (Tr. at 314-371). ALJ Fishman's failure

---

[3] In Dyer, the court held that there is no rigid requirement that an ALJ specifically refer to every piece of evidence, provided that the ALJ's decision is not a broad rejection of the evidence. Dyer, 395 F. 3d at 1211.

to discuss the evidence relating to the treatment for Richard's nasal abscess was not error because the condition lasted less than twelve months. See 20 C.F.R. § 416.906. ALJ Fishman also did not err by failing to discuss the Satilla Regional medical records pertaining to Richard's treatment for chest pains because those records are consistent with the rest of the medical evidence and ALJ Fishman's decision. See Dyer, 395 F. 3d at 1211.

### III. Substantial evidence supports the ALJ's decision that Richard's impairments do not functionally equal a listing.

Morgan asserts that Richard has marked limitations in all six areas of functioning. (Doc. No. 15, p. 15). Morgan further asserts that the ALJ made erroneous findings regarding Richard's limitation level in those six areas of functioning. (Id. at 18).

As noted above, if a child's impairment does not medically meet a listed impairment, the ALJ must determine whether the child "'functionally equal[s] the listings.'" "Functionally equal the listings," means that the child's "impairment(s) must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for self; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The Commissioner will find a "marked" limitation in a domain when the impairment(s) interferes seriously with the child's ability to independently initiate, sustain, or complete activities. "Marked" limitation also means a limitation that is more than moderate but less than extreme. 20 C.F.R. § 926a(e)(2)(i). The Commissioner will find a "marked" limitation when the child has a valid score that is at least two, but less

AO 72A
(Rev. 8/82)

10

than three, standard deviations below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and the child's day-to-day functioning in domain-related activities is consistent with that score. 20 C.F.R. § 926a(e)(2)(iii). The Commissioner will not rely on any single test score alone, as no single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain. 20 C.F.R. § 926a(e)(4)(i).

### A.     Acquiring and Using Information.

Morgan contends that the ALJ did not discuss the psychological consultative report of Dr. Engen from September of 2005. Morgan further contends that Dr. Engen found that Richard had a GAF of 50, was anxious, dysthymically disposed, and functioned in the borderline intellectual range. (Doc. No. 15, p. 21). Defendant asserts that Morgan cites no evidence that indicates that Richard was functioning within the lowest second percentile. (Doc. No. 16, p. 16). The domain of acquiring and using information considers how well a child is able to acquire or learn information, and how well a child uses the information he has learned. 20 C.F.R. § 416.926a(g).

ALJ Fishman determined that Richard has a less than marked limitation in acquiring and using information. The ALJ observed that testing performed by Dr. Acker during a November 7, 2006, psychological consultative examination revealed scores indicating that Richard functions within the borderline intellectual range. However, the ALJ further observed that Richard achieved a Standard Reading Score of 91, which placed him in the 27th percentile, and a Standard Arithmetic Score of 94, which placed him in the 34th percentile. These scores indicate functioning in the average range. The ALJ remarked that Richard's scores from a March 2007 Iowa Tests of Basic Skills

("ITBS") indicate that he is functioning a couple years behind. The ALJ further remarked that Richard's ITBS results reveal reading scores in the ninth percentile and mathematic scores in the fifth percentile. ALJ Fishman observed that, considering Richard tested much higher during a consultative examination performed only four months prior, this drastic decline was either due to his home schooling or other factors. (Tr. at 18).

Substantial evidence supports the ALJ's finding that Richard has a less than marked limitation in the domain of acquiring and using information. ALJ Fishman supported his determination with the findings of Dr. Acker and Richard's 2007 ITBS scores. Richard did not score two standard deviations below the mean in either Dr. Acker's findings or on the ITBS. ALJ Fishman also discounted Richard's ITBS scores, which were significantly lower than Dr. Acker's findings. (Tr. at 18). Morgan's contention that the ALJ erred by not discussing Dr. Engen's psychological consultative report is without merit because Dr. Engen's findings were not contradictory to the ALJ's decision. See Dyer, 395 F. 3d at 1211. Dr. Acker's consultative report was completed over a year after Dr. Engen's report and there is no significant difference between the two reports. In fact, Dr. Acker's findings are slightly more beneficial to Morgan's argument, as he found Richard to have a Verbal IQ of 75; Performance IQ of 71; and Full Scale IQ of 71, while Dr. Engen found Richard to have a Verbal IQ of 84; Performance IQ of 74; and Full Scale IQ of 77. Morgan does not offer an explanation as to how Dr. Engen's report supports a finding that Richard has a marked limitation in the domain of acquiring and using information. Morgan further fails to reference any evidence showing that Richard has a marked limitation in this domain.

### B. Attending and Completing Tasks

Morgan asserts that ALJ Fishman incorrectly found that Richard has a less than marked limitation in the attending and completing tasks domain. Morgan further asserts that ALJ Fishman erred by relying on Dr. Acker's consultative evaluation because he had previously discredited Dr. Acker's evaluation. (Doc. No. 15, pp. 22-23). Defendant concedes that Richard is significantly impaired in this domain, but contends that the ALJ's finding that he did not have a marked limitation is consistent with the findings of Dr. Acker and Dr. Engen. (Doc. No. 16, pp. 16-17).

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h). ALJ Fishman determined that Richard has a less than marked limitation in attending and completing tasks. The ALJ remarked that Dr. Acker stated that Richard is able to understand simple instructions and process new information when he is attentive and focused. The ALJ further remarked that this is verified by Richard's Standard Reading Score of 91 and Standard Arithmetic Score of 94. The ALJ observed that Dr. Acker also stated that Richard is easily distracted and poorly motivated to complete assigned tasks. (Tr. at 18).

Morgan's contention that Richard has a marked limitation in the domain of attending and completing tasks is without merit. Morgan contends that the ALJ erred by relying on Dr. Acker's report because he previously discredited it. However, it is clear from ALJ Fishman's opinion that he did not discredit Dr. Acker's report. If ALJ Fishman had discredited Dr. Acker's report, he would not have repeatedly cited it in his decision.

(Tr. at 16. 18). ALJ Fishman did observe that "Dr. Acker did not address the discrepancy between the claimant's IQ and academic scores which suggest the IQs are an underestimate if not invalid." (Tr. at 16). However, this appears to merely be ALJ Fishman expressing his opinion that Richard possessed a higher IQ than indicated by his testing scores, not that he was discrediting Dr. Acker's entire report. As ALJ Fishman cited Dr. Acker's report, as well as Richard's Reading and Arithmetic Scores, his decision that Richard has a less than marked limitation in the domain of attending and completing tasks is supported by substantial evidence.

### C. Interacting and Relating with Others

Morgan asserts that Richard has a marked limitation in the domain of interacting and relating with others. Morgan further asserts that the ALJ's observation that Richard has neighborhood friends, with whom he talks, plays videogames, and plays ball does not reflect the complete record. Morgan contends that the ALJ's observation ignores her testimony and Richard's testimony that he was only able to interact with his friends on a limited basis, as well Dr. Reddy's diagnosis of separation anxiety. Morgan further contends that the ALJ ignores the reason Richard was taken out of public school. Morgan asserts that Richard's long term treating psychiatrist recommended that he be home schooled because he was not functioning and getting along well with others at school. Morgan further asserts that the findings of Dr. Acker and Dr. Reddy documented specific difficulties with social interaction and communication, as well as the need to be home schooled. (Doc. No. 15, p. 24). Defendant contends that the record supports the ALJ's finding. (Doc. No. 16, p. 17).

The domain of interacting and relating with others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). ALJ Fishman determined that Richard has a less than marked limitation in interacting and relating with others. The ALJ observed that Richard is somewhat isolated due to home schooling, but noted that he testified to having neighborhood friends with whom he talks, plays videogames, and plays ball. (Tr. at 19).

Substantial evidence supports ALJ Fishman's determination that Richard has a less than marked limitation in the domain of interacting and relating with others. While Morgan references evidence that may have led another ALJ to find that Richard had a marked limitation in this domain, ALJ Fishman cited evidence sufficient to support his decision. It is not the place of this Court to "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer, 395 F.3d at 1210.

### D. Moving About and Manipulating Objects

Morgan contends that ALJ Fishman's determination that Richard has a less than marked limitation in the domain of moving about and manipulating objects ignores the medical evidence. (Doc. No. 15, p. 26). Defendant asserts that Morgan cites no evidence supporting her claim that Richard has a marked limitation in this domain. Defendant further asserts that Richard's only limitation in this area is his endurance. Defendant contends that Richard's endurance improved after his successful ablation procedure in 2005. (Doc. No. 16, p. 17).

The domain of moving about and manipulating objects considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These are called gross and fine motor skills. 20 C.F.R. § 416.926a(j). ALJ Fishman determined that Richard has a less than marked limitation in the domain of moving about and manipulating objects. The ALJ remarked that Richard has a history of fatigue, breathing problems, and chest pain upon exertion. The ALJ further remarked that these complaints are debatable based on the evidence of record. The ALJ observed that the cause of Richard's complaints is being investigated. (Tr. at 20).

ALJ Fishman's determination that Richard has a less than marked limitation in the domain of moving about and manipulating objects is supported by substantial evidence. While Richard has a history of fatigue, he does not appear to be markedly limited in this domain. Richard testified that he likes to throw the football and baseball with his friends. These activities require both gross and fine motor skills. (Tr. at 32). Richard further testified that he likes to play videogames, which requires the use of fine motor skills. (Tr. at 33). Richard also testified that he does chores, such as feeding his dog, rabbit, and chickens; cleaning his room; and sometimes taking out the trash. (Tr. at 34-35). These chores require the use of gross and fine motor skills. Morgan fails to reference any evidence in support of her position.

### E. Caring for Self

Morgan contends that Richard has a marked limitation in the domain of caring for self. Morgan asserts that this domain considers whether or not the child maintains a healthy emotional and physical state and how he copes with stress and changes in his

environment. Morgan further asserts that the evidence is clear that Richard has a lot of problems dealing with stress, including concerns over his physical health. (Doc. No. 15, p. 27). Defendant contends that there is no evidence contradicting Richard's statement that he could take care of his personal needs. Defendant further contends that the record showed Richard also completed various chores. (Doc. No. 16, p. 18).

The domain of caring for self considers how well a child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways. This domain also includes how well the child copes with stress and changes in his environment and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). ALJ Fishman determined that Richard has no limitation in the domain of caring for self. ALJ Fishman observed that Richard testified that he can take care of his personal needs. ALJ Fishman further observed that a review of the record finds no evidence to dispute Richard's statement. (Tr. at 21).

Substantial evidence supports ALJ Fishman's finding that Richard has no limitation in the domain of caring for self. As noted by the ALJ, Richard testified that he can take care of his personal needs. (Tr. at 36). Richard's testimony that he completes his chores is further evidence that he can care for himself. (Tr. at 34-35). Further, there is no evidence of Richard displaying limited functioning in the ability to care for himself consistent with the examples listed by the regulations.[4]

---

[4] The regulations list as examples of limited functioning in the domain of caring for self: (i) placing non-nutritive or inedible objects in mouth; (ii) using self-soothing activities that show developmental regression; (iii) not dressing or bathing appropriately for age because of an impairment that affects this domain; (iv) engaging in self injurious behavior or ignoring safety rules; (v) not spontaneously pursuing enjoyable activities or interests; and (vi) having a disturbance in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3).

### F. Health and Physical Well-being

Morgan asserts that Richard has a marked limitation in the domain of health and physical well-being. Morgan contends that Richard's continuing problems with heart palpitations and difficulty breathing are well documented. Morgan further contends that the ALJ erred by finding that Richard seemed to be doing fairly well despite being diagnosed with hyperlipidemia, morbid obesity, borderline hypertension, Type II diabetes mellitus, metabolic syndrome, migraine headaches, and asthma because the medical evidence dictates a different result. (Doc. No. 15, pp. 28-29). Defendant concedes that Richard does have various problems, but asserts that most of them seem to have been successfully treated or controlled. Defendant further asserts that Morgan has made no showing that Richard is subject to limitations in this area equivalent to those specified in 20 C.F.R. § 416.926a(1). (Doc. No. 16, p. 18).

The domain of health and physical well-being considers the cumulative effects of physical or mental impairments and their associated treatments or therapies on a child's functioning that was not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(I). ALJ Fishman determined that Richard has a less than marked limitation in the domain of health and physical well-being. The ALJ noted that Richard was diagnosed with Wolff-Parkinson-White syndrome, for which he successfully underwent radiofrequency ablation of the left anterolateral accessory pathway with no recurrences. ALJ Fishman observed that Richard was diagnosed with hyperlipidemia, morbid obesity, borderline hypertension, type II diabetes mellitus which was treated with Glucophage, and metabolic syndrome. ALJ Fishman further observed that there is no evidence of end organ damage, no subacute bacterial endocarditis

prophylaxis, and no atrial septal aneurysm. The ALJ remarked that Richard's migraine headaches are treated with medication and he has not experienced an acute exacerbation of his asthma in the past few years. The ALJ further remarked that a report from Dr. Reddy states that Richard was doing fairly well; his blood sugar was stable; and his affect was calm and relaxed. The ALJ observed that a report from Dr. Harper several months later indicated that Richard denied having chest pain, chest tightness, shortness of breath, and wheezing. (Tr. at 21).

Substantial evidence supports the ALJ's finding that Richard has a less than marked limitation in the domain of health and physical well-being. Morgan's contention that the medical evidence is contrary to ALJ Fishman's decision is unavailing. Morgan does not support her argument with any medical evidence from the record. Morgan contends that Richard's continuing problems with heart palpitations and difficulty breathing are well documented. However, Richard successfully underwent radiofrequency ablation of the left anterolateral accessory pathway in July of 2005 and this appears to have relieved many of the problems he suffered due to Wolff-Parkinson-White syndrome. An examination by Dr. Burch on November 14, 2007, revealed that Richard was doing well with no history of shortness of breath, easy fatigability, dizziness, syncope, or cyanosis. (Tr. at 460). Morgan lists Richard's medications, but she does not point to any physical effects the medications have on Richard which limit his performance of activities. See 20 C.F.R. § 416.926a(l)(2) (an ALJ will consider whether medications have physical effects that limit performance of activities). With regard to Richard's hyperlipidemia, morbid obesity, borderline hypertension, type II diabetes mellitus, and metabolic syndrome, ALJ Fishman determined that there was no

AO 72A
(Rev. 8/82)

evidence of end organ damage, subacute bacterial endocarditis prophylaxis, or atrial septal aneurysm. ALJ Fishman observed that Richard's diabetes and migraines were treated with medication. ALJ Fishman further observed that Richard has not experienced an acute exacerbation of his asthma in several years. (Tr. at 21). Substantial evidence supports ALJ Fishman's determination that Richard has a less than marked limitation in the domain of health and physical well-being.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 24th day of August, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE